IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CRYSTAL PEÑA,**

    Plaintiff,

    v.                                      No. 1:12-CV-00710-JB-WDS

**DALE GREFFET and CARLOS VALLEJOS, in their individual capacities, ARLENE HICKSON in her individual and official capacities, and CORRECTIONS CORPORATION OF AMERICA,**

    Defendants.

### AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND COMMON LAW TORTS

Plaintiff Crystal Peña through her attorney Fine Law Firm (Mark Fine) and Garcia, Ives, Nowara (Zachary Ives) hereby and respectfully brings this Complaint for violation of her civil rights under 42 USC § 1983 and for tort violations. She alleges the following:

### *JURISDICTION AND VENUE*

1. This Court has jurisdiction over the subject matter and parties to this action pursuant to the jurisdiction conferred upon it by 28 U.S.C. § 1331.

2. Venue is proper in this district because Defendant Greffet is resident of New Mexico, Plaintiff is a resident of New Mexico, and all of the acts complained of occurred in Grants, New Mexico. Plaintiff's cause of action arose in Grants, New Mexico.

### *PARTIES*

3. At the time of the allegation contained herein, Plaintiff Crystal Peña was a post-conviction prisoner at the New Mexico Women's Correctional Facility ("the NMWCF") in Grants, New Mexico, or a parolee or probationer therefrom and, as such, she was entitled to the

protections of the Eighth and/or Fourth and Fourteenth Amendments to the United States Constitution.

4. During all times relevant to this Complaint, Defendant Corrections Corporation of America ("the Corporation") operated and maintained NMWCF pursuant to a contract with the State of New Mexico, and was bound by contract to comply with certain policies of the New Mexico Corrections Department ("NMCD").

5. During all times relevant to the allegations against her, the Corporation employed Defendant Hickson as the Warden and head supervisor of the NMWCF.

6. During portions of the allegations against him, the Corporation employed Defendants Dale Greffet and Carlos Vallejos as a corrections officers at the NMWCF.

## FACTUAL ALLEGATIONS

7. As a young child, Plaintiff was violently raped by her mother's boyfriend on two separate occasions.

8. Prior to the allegations contained herein, Plaintiff was diagnosed with debilitating mental illnesses.

9. In the Spring of 2009, while Plaintiff was isolated in the segregation unit of the NMWCF, she was befriended by Defendant Greffet, who initiated, cultivated, and encouraged an intimate relationship with Plaintiff that was against the policies and procedures of the Corporation and the NMCD.

A. NMWCF Sexual Abuse

10. Beginning in July of 2009, Defendant Greffet began to make sexualized comments about Plaintiff's physical appearance.

11. For a time, Plaintiff resisted these advances.

12. In July and August of 2009, Defendant Greffet began to sexually fondle Plaintiff, as that term is defined in 42 U.S.C.A. §15609(11).

13. During the same time frame, Defendant Greffet also made numerous false statements to Plaintiff; in particular, Defendant Greffet expressed his intent to enter into a committed relationship with Plaintiff and his desire to raise children with her after her release from custody.

14. Plaintiff relied on these statements and came to believe that Defendant Greffet was committed to a monogamous relationship with her in which the two of them would raise children.

15. Plaintiff was particularly susceptible to these advances because of her history of sexual victimization, her mental illnesses, and her aspiration to a life of love and normalcy.

16. At some point during late July or early August of 2009, Defendant Greffet called Plaintiff into the Commander's officer in front of the master control area of the NMWCF.

17. Sitting at the Commander's desk, Defendant Greffet revealed his erect penis to Plaintiff and told her to look and see the effect that she had on him.

18. With Plaintiff under the table, Defendant Greffet orally sodomized her, as that term is defined by 42 U.S.C.A § 15609(5).

B.  Alamogordo Incidents

19. Plaintiff paroled to Ruidoso from the NMWCF on or about late August of of 2009.

20. After Plaintiff paroled, Defendant Greffet obtained Plaintiff's phone number from Plaintiff's aunt, who was incarcerated at the NMWCF.  Defendant Greffet contacted Plaintiff and pressured her to meet him.

21. On Labor Day Weekend of 2009, just before Plaintiff entered into a in-patient treatment program in Alamogordo, Defendant Greffet rented a motel room for the two of them.

22. In the motel room, Defendant Greffet had sex with Plaintiff

23. Plaintiff resisted Defendant Greffet's efforts to orally and anally sodomize her, but relented when Defendant Greffet persisted.

24. On or about October of 2009, Plaintiff's parole was revoked, and she returned to the NMWCF, where Defendant Greffet continued to work.

25. Upon her return from parole, Defendant Greffet continued to make false statements regarding his commitment to her and his intent to raise children with her, to make sexual advances toward her, and to sexually fondle her.

26. On or around April of 2010, Defendant Greffet left his position at the NMWCF. Before he left, Defendant Greffet again expressed his plans to live with Plaintiff and raise children with her.

C. Albuquerque Incidents

27. On or about August of 2010, Plaintiff was released from the NMWCF on probation. A condition of her probation was that she be enrolled in an in-patient treatment program.

28. Plaintiff reported to the Maya's Place treatment program, where she tried to qualify for the program.

29. During this time frame, Defendant Greffet had sex with Plaintiff on three occasions, and again overcame Plaintiff's resistance to anal sodomy. Defendant Greffet conceived a child with Plaintiff during this time frame.

30.     Eventually, Plaintiff was rejected by Maya's Place because she suffered from mental illness rather than drug dependence and therefore did not fit the criteria for admittance at the program.

D.     The Birth of Plaintiff's Son

31.     Because she was unable to enter a treatment program and thereby satisfy her condition of probation, Plaintiff turned herself into law enforcement in September of 2010.

32.     Defendant Greffet promised to bond Plaintiff out from Doña Ana Detention Center, where she would be held.

33.     As she was turning herself in, Plaintiff fainted and was transported to the emergency room, where she learned for the first time that she was pregnant.

34.     The next day, from jail, Plaintiff informed Defendant Greffet that she was pregnant. Defendant Greffet indicated that he thought that aborting the baby was the best option.

35.     Doña Ana County Detention Center made arrangements for the abortion to be performed, but when she was transported for her appointment, Plaintiff could not go through with it, and returned to jail with the baby still *in utero*.

36.     Eventually, Plaintiff realized that she was not going to be bonded out by Defendant Greffet and that she was going to have to deliver the child while she remained incarcerated. She consulted with Defendant Greffet regarding how to care for the child during his first months of life, when she would still be incarcerated.

37.     Defendant Greffet expressed that he would not care for the baby, and that he believed that adoption was the best option.

38.  Prior to the birth of the baby, and due in large part to her inability to find someone to care for the baby while she remained in prison, Plaintiff felt compelled to relinquish her parental rights.

39.  Plaintiff gave birth to her son on May 2, 2011 while incarcerated at the NMWCF.

E.  <u>Defendant Vallejos' Assault and Battery of Plaintiff</u>

40.  On or around early June of 2011, Plaintiff was suffering from postpartum depression, in addition to her other mental illnesses, and was grieving her estrangement from her son as she walked down a hallway of the NMWCF.  She was visibly upset.

41.  Defendant Carlos Vallejos verbally engaged Plaintiff in the hallway, asking her what was wrong.

42.  Plaintiff was despondent and traumatized and did not have the will or the desire to explain to Defendant Vallejos her predicament or her feelings; she continued to walk toward her unit, where she intended to contact mental health for immediate mental health treatment.

43.  After Plaintiff failed to respond his questioning, Defendant Carlos Vallejos pursued her down the hallway, grabbed her from behind and slammed her against the wall of the hallway, causing bruising to her arms, and triggering severe symptoms of Plaintiff's chronic PTSD.

44.  Before Defendant Vallejos grabbed Plaintiff and slammed her against the wall, Plaintiff had not said anything to Defendant Vallejos and had not physically challenged or threatened him or anyone else.  She was simply walking away from him, on the path to her unit, where she hoped to obtain immediate mental health treatment.

45.  Defendant Vallejos' use of force against Plaintiff did not serve any penological interest, and violated the Corporation's and the New Mexico Corrections Department's policies on use of force.

46. Upon information and belief, because of Mr. Vallejos' battery of Plaintiff and his mistreatment of other inmates at the facility, the Corporation removed him from his position at the NMWCF.

F.  Retaliation Against Plaintiff

47. In response to this incident, the Corporation and Defendant Hickson placed Plaintiff in isolated/segregated confinement.

48. After she was placed in segregated confinement, the Corporation, through its agents and employees, came to know that Plaintiff was claiming that Defendant Greffet had raped her, and pressured Plaintiff to provide them with a statement about the incident.

49. When Plaintiff refused to provide them with a statement about Defendant Greffet, and when it became clear that she was claiming that Defendant Vallejos had assaulted and battered her, the Corporation and Defendant Hickson kept Plaintiff in varying levels of segregated confinement for a period of approximately eight months in violation of the Corporation and NMCD's policies pertaining to such placement.

50. Plaintiff's placement in segregated confinement severely aggravated her fragile mental condition, prevented her from contacting the outside world including her mother and the Elijah's adoptive parents, caused her to lose good time and to remain incarcerated for a longer period of time, and resulted in severe mental and emotional distress.

### *COUNT I*

### SECTION 1983 CLAIM AGAINST DEFENDANT GREFFET

51. Plaintiff incorporates the above paragraphs as though fully set forth herein.

52. At the time that Defendant Greffet sexually fondled Plaintiff in the NMWCF (on or about July 2009 - August of 2009 and October 2009 - April 2010) and orally sodomized Plaintiff

in the NMWCF (on or about August of 2009), she was a post-conviction prisoner, and, as such, enjoyed the right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. This included a right to be secure in her bodily integrity and free from sexual advances, sexual fondling, sexual intercourse, anal sodomy, and oral sodomy by prison personnel.

53. Plaintiff did not consent to the sex acts described above, and could not have so consented both because she was a prisoner in the NMWCF and because her history of sexual abuse and her mental illnesses rendered her incapable of providing such consent.

54. Defendant Greffet violated Plaintiff's Eighth Amendment right to be secure in her bodily integrity and free from sexual advances by prison personnel when he sexually fondled and orally sodomized her in the NMWCF.

55. Defendant Greffet's sexual abuse of Plaintiff, described above, was intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's constitutional rights.

56. Defendant Greffet's sexual abuse constituted a physical injury to Plaintiff.

57. Defendant Greffet's sexual abuse caused Plaintiff's damages and injuries, including physical injury, invasion of bodily integrity, and severe psychological and emotional distress, including the injuries and distress associated with the Alamogordo and Albuquerque incidents.

WHEREFORE, Plaintiff Crystal Peña requests compensatory and punitive damages against Defendant Greffet, together with all costs and attorney fees.

## COUNT II

### SECTION 1983 CLAIM AGAINST DEFENDANT VALLEJOS

58. Plaintiff incorporates the above paragraphs as though fully set forth herein.

59. At the time that Defendant Vallejos attacked Plaintiff in the hallway of the NMWCF, Plaintiff enjoyed an Eighth Amendment right to be free from cruel and unusual punishment, and to be free from unreasonable, unnecessary, and excessive force when committed by a person acting under color of law.

60. Defendant Vallejos conduct in grabbing Plaintiff and slamming her against the wall constituted unreasonable, unnecessary, and excessive force, and violated Plaintiff's aforementioned Eighth Amendment rights.

61. Defendant Vallejos' use of unreasonable, unnecessary, and excessive force against Plaintiff was intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's constitutional rights.

62. Defendant Vallejos' use of unreasonable, unnecessary, and excessive force against Plaintiff constituted a physical injury to Plaintiff.

63. Defendant Vallejos' use of unreasonable, unnecessary, and excessive force against Plaintiff proximately caused Plaintiff's damages and injuries, including physical injury and severe psychological and emotional distress.

64. WHEREFORE Plaintiff Crystal Peña requests compensatory and punitive damages against Defendant Vallejos, together with all costs and attorney fees.

## *COUNT III*

### SECTION 1983 CLAIMS AGAINST THE CORPORATION AND DEFENDANT HICKSON

65. Plaintiff incorporates the above-enumerated paragraphs as though fully set forth herein.

66. At all times relevant to this Complaint, the Eighth and Fourteenth Amendments prevented the Corporation and Defendant Hickson from exposing Plaintiff to unreasonable risks

of harm or from exercising deliberate indifference toward her safety, security, and constitutional rights.

67. The Corporation and Defendant Hickson engaged in a custom of suppressing, denying, or disregarding incidents of prison rape that included, but were not limited to, the following practices:

- placing inmates who reported sexual or other staff misconduct in segregation, or otherwise retaliating against them;
- violating internal and NMCD policies by failing to report allegations of prison rape to outside law enforcement;
- failing to conduct adequate internal investigations of rape allegations; and
- offering financial incentives for non-reporting.

68. The customs and practices described above constituted deliberate indifference to the safety, security, and rights of Plaintiff and other prisoners at NMWCF, and exposed Plaintiff and other prisoners to unreasonable risks of harm.

69. The Corporation's and Defendant Hickson's wrongful acts and failures to act proximately caused Plaintiff's damages, including physical injury, invasion of bodily integrity, and severe psychological and emotional distress, including the injuries and distress associated with the Alamogordo and Albuquerque incidents..

WHEREFORE, Plaintiff Crystal Peña asks for compensatory and punitive damages against the Corporation and Defendant Hickson, together with an award of reasonable attorneys' fees and costs.

## COUNT IV

### SECTION 1983 RETALIATION AGAINST THE CORPORATION AND DEFENDANT HICKSON

70. Plaintiff incorporates the above-enumerated paragraphs as though fully set forth herein.

71. During all times relevant to this Complaint, Plaintiff enjoyed a right to be free from retaliation for exercising her First Amendment right to report sexual or other physical assaults by prison officers. Plaintiff also enjoyed an Eighth Amendment right to be free from cruel and unusual punishment, and a Fourteenth Amendment right to procedural due process.

72. The Corporation and Defendant Hickson violated CCA and/or NMCD policies on the classification of inmates into segregated confinement when they placed Plaintiff into segregated confinement following her reporting of Defendant Greffet's rapes and Carlos Vallejos' assault.

73. Plaintiff was placed in segregation by the Corporation and Defendant Hickson because she reported Defendant Greffet's rape and/or Carlos Vallejos' assault.

74. By placing Plaintiff in segregation because she reported Defendant Greffet's rapes and/or Carlos Vallejos' assault, the Corporation and Defendant Hickson violated her First Amendment right to report sexual or other physical assaults by prison officers, her Eighth Amendment right to be free from cruel and unusual punishment, and her Fourteenth Amendment right to procedural due process.

75. Defendants' acts proximately caused Plaintiff's damages and injuries, including loss of liberty and severe psychological and emotional distress.

WHEREFORE, Plaintiff request compensatory and punitive damages against Defendant Hickson and the Corporation, together with all costs and attorneys fees.

## COUNT V

### INTENTIONAL TORT (BATTERY) AGAINST DEFENDANT GREFFET FOR THE ALBUQUERQUE AND ALAMOGORDO RAPES

76. Plaintiff incorporates the above paragraphs as though fully set forth herein.

77. At all times that Defendant Greffet sexually contacted and penetrated Plaintiff, Plaintiff lacked the capacity to consent to thereto. In any case, Plaintiff did not consent to the sexual penetration or contact.

78. Defendant Greffet's sexual contact and penetration of Plaintiff in the NMWCF, in Alamogordo, and in Albuquerque, as described above, constituted the intentional torts of battery and rape.

79. Defendant Greffet's batteries and rapes of Plaintiff proximately caused Plaintiff's damages and injuries, including physical injury, invasion of bodily integrity, and severe psychological and emotional distress.

80. At the time of the NMWCF rapes, Plaintiff was directly informed and/or had reason to believe that Defendant Greffet was an agent and employee of the Corporation.

81. Because Defendant Greffet was an agent of the Corporation at the time of the NMWCF rapes, the Corporation is legally liable for the tortious conduct that occurred at the NMWCF, as described above, under the legal doctrine of "*respondeat superior.*"

WHEREFORE Plaintiff Crystal Peña requests compensatory and punitive damages against Defendant Greffet and the Corporation, together with all costs and attorney fees.

## COUNT VI

### INTENTIONAL TORT (BATTERY) AGAINST DEFENDANT VALLEJOS

82. Plaintiff incorporates the above paragraphs as though fully set forth herein.

83. Defendant Vallejos caused an offensive touching to Plaintiff by violently grabbing her and slamming her against the wall in the absence of a legitimate penological interest and against the policies of the Corporation and the New Mexico Corrections Department.

84. This offensive touching constituted a battery of Plaintiff that was neither justified not excusable.

85. Defendant Vallejos battery of Plaintiff caused bruising to appear on Plaintiff's arms.

86. The conduct of Defendant Vallejos proximately caused Plaintiff damages. These damages include pain and suffering and severe psychological and emotional distress.

87. Plaintiff was directly informed and/or had reason to believe that Defendant Vallejos was an agent and employee of the Corporation at all times material.

88. Under the legal doctrine of "*respondeat superior*," the Corporation is legally liable for the tortious conduct of its agent and employee, Defendant Vallejos.

WHEREFORE Plaintiff Crystal Peña requests compensatory and punitive damages against Defendant Vallejos and the Corporation, together with all costs and attorney fees.

Respectfully Submitted,

*/s/ Mark Fine*
Mark Fine
FINE LAW FIRM
220 Ninth St., NW
Albuquerque, NM 87102
505.243.4541

*/s/ Zachary Ives*
Zachary A. Ives
GARCIA IVES NOWARA
201 Third Street NW
Suite 480
Albuquerque, NM 87102
505.899.1030